**BAYER & WILLIS INC.,**
et al., Plaintiffs,

v.

**REPUBLIC OF the GAMBIA,**
et al., Defendants.

No. CIV.A 02–0176(EGS).

United States District Court,
District of Columbia.

Sept. 11, 2003.

Minh Ngoc T. Nguyen, Stephen L. Bluestone, Bluestone Law Ltd., Bethesda, MD, for Plaintiffs.

Edward R. McNicholas, Sidley, Austin, Brown & Wood, LLP, Washington, DC, for AT&T Corp.

John Edward McCaffrey, Stinson, Morrison, Hecker, LLP, Washington, DC, for Sprint International Communications Corp.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

On October 8, 2002, after satisfying itself that the requirements of the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§ 1602–1611, had been met, this Court awarded plaintiff a default judgment against defendant the Republic of Gambia. On November 20, 2002, at plaintiff's request, the Clerk of the Court issued Writs of Attachment on Judgment and interrogatories to AT & T Corporation ("AT & T"), IDT Corporation ("IDT"), Sprint International Communication "Sprint", and MCI Worldcom ("MCI"). On December 20, 2002, plaintiff moved for entry of final judgment against all corporations except IDT. On January 31, 2003, after filing unopposed motions for extensions of time to answer, all corporations, again with the exception of IDT, answered the interrogatories accompanying the Writs of Attachment. In addition, AT & T moved to dismiss its Writ of Attachment. Plaintiff subsequently moved to traverse the answers of AT & T and Sprint Communications, but later withdrew the motion to traverse against Sprint.

Several motions remain pending before the Court: garnishee AT & T's motion to dismiss the Writ of Attachment, plaintiff's motions for judgment against AT & T, Sprint and MCI Worldcom, and plaintiff's motion to traverse AT & T's answers to interrogatories. The Court will address each of these in turn.

## I. Motion to Dismiss Writ of Attachment

In its answer and its motion to dismiss its Writ of Attachment, AT & T makes two arguments, the first procedural and the second substantive.

### A) Failure to comply with procedural requirements of the FSIA

First, AT & T objects to the issuance of the November 20, 2002 Writ of Attachment by the Clerk of the Court, arguing that, in actions governed by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611, such a writ must be issued by the Court itself. The statutory section on which it relies provides that

> [n]o attachment or execution ... shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C. § 1610(c); see also Ned Chartering and Trading, Inc. v. Republic of Pakistan, 130 F.Supp.2d 64, 66 (D.D.C.2001) (finding writs of attachment issued by Clerk of the Court in connection with judgment entered against foreign sovereign invalid under § 1610(c)) (citing cases); see also Connecticut Bank v. Republic of Con-

go, 309 F.3d 240, 247, 250 (5th Cir.2002) ("Some jurisdictions permit judgment creditors to execute against property simply by applying to the clerk of the court or to a sheriff. Section 1610(c) does not permit such summary procedures to be used when a foreign sovereign's property is involved. Instead, it requires a court to enter the writ of execution, so that the court can determine whether the property in question falls within one of the statutory exceptions to foreign sovereign immunity.").

Plaintiff appears to concede this point, and, in its opposition to AT & T's motion to dismiss, expressly asks the Court to either re-issue the Writ of Attachment *nunc pro tunc*, or simply issue a Writ of Execution against the property of Gambia Telecommunications Co., Ltd. ("Gamtel") held by AT & T.

Accordingly, AT & T's motion to dismiss the existing Writ, issued by the Clerk of the Court on November 20, 2002, is hereby **GRANTED.** Furthermore, the Court will, *sua sponte*, **DISMISS** the remaining Writs issued by the Clerk of the Court on November 20, 2002 against Sprint, MCI, and IDT, and **DENY** as moot the motions for judgment against MCI and Sprint.

It appears that it would be procedurally proper for the Court to issue new writs of attachment and interrogatories against the three corporations *nunc pro tunc*, based on a finding that, by November 20, 2002, a "reasonable period of time ha[d] elapsed following the entry of judgment and the giving of any notice required" *See Ned Chartering and Trading, Inc. v. Republic of Pakistan*, 130 F.Supp.2d at 67 (finding six weeks between entry of judgment and issuance of writ to be sufficient to meet Section 1610(c)'s requirement that "a rea-

sonable period of time has elapsed" prior to issuance of writ of attachment against foreign sovereign). However, the Court finds that the substantive argument raised in AT & T's motion to dismiss the existing Writ of Attachment counsels against granting plaintiff's alternate request for a Writ of Execution against the property of Gamtel held by AT & T.

B) *Propriety of executing judgment against AT & T*

AT & T maintains that it is an improper garnishee for the purposes of satisfying plaintiff's judgment against the Republic of Gambia because it does not hold any assets belonging to either of the two named defendants in this case, the Republic of Gambia and the Embassy of the Republic of Gambia. AT & T does concede, however, that it holds assets of Gambia Telecommunications Co., Ltd. ("Gamtel"),[1] but argues that entity is not a defendant in this action, is not named on the Writ of Attachment, and "has not been adjudged by this Court to lack a distinct corporate existence to such a degree that it should be held liable for the debts of the Defendants." AT & T Mot. to Dismiss at 2.

The FSIA provides that "the property in the United States of a foreign state shall be immune from attachment, arrest and execution" except, *inter alia*, where the property is used for a commercial activity in the United States. 28 U.S.C. § 1601(a)(2); *see also Connecticut Bank v. Republic of Congo*, 309 F.3d at 251–53 ("What matters under the statute is what the property is 'used for,' not how it was generated or produced."); *Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*, 183 F.3d 1277, 1283 (11th Cir.1999)

---

**1.** The assets in question are in the form of funds owed by AT & T to Gamtel as credits for Gamtel's provision of services enabling calls originating in the U.S. to terminate in the Republic of Gambia.

(finding that, assuming amounts owed to Cuban telephone company by American telephone company were used for a commercial activity in the U.S., they were not immune from garnishment to satisfy judgment against foreign government under the FSIA).

Plaintiff appears to seek attachment of Gamtel's assets on the theory that, as an instrumentality of the Republic of Gambia, its assets may be attached in aid of execution of plaintiff's judgment against the defendants. An "agency or instrumentality" is defined in the Act as any entity which "is a separate legal person, corporate or otherwise, and . . . which is an organ of a foreign state . . ., or a majority of whose shares or other ownership interest is owned by a foreign state, and . . . which is neither a citizen of a State of the United States . . ., nor created under the laws of any third country." 28 U.S.C. § 1603(b). The statute further stipulates that

> any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States . . . .

28 U.S.C. § 1610(b).

■ Plaintiff submits, citing to public documents, that Gamtel is a "parastatal entity" operated "under Government directives and support." *See* Pl.'s Opp'n at 7, Ex. 7 ("Gamtel, under Government directives and support, provided direction for the prompt implementation of the IIA project . . . ."). In support of it position, plaintiff emphasizes that the Republic of Gambia holds 99% of Gamtel's stock, Gamtel's Managing Director is the country's

Minister of Works, Communication and Information, and the Board of Directors is appointed by the President of the Republic of Gambia. *See* Pl.'s Opp'n at 7, Ex. 7 ("Gamtel, under Government directives and support, provided direction for the prompt implementation of the IIA project . . . ."). AT & T counters that Gamtel is "partially owned by a third party (Gambia National Insurance Company)," although, as plaintiff points out, that company owns only 1% of Gamtel's stock. Nevertheless, it appears clear on the undisputed facts before the Court, namely that the Republic of Gambia owns 99% of Gamtel's stock, that Gamtel meets the FSIA's definition of an "agency or instrumentality."

■ Where seeking to attach the property of a foreign agency or instrumentality, there is no requirement that the attached property be "used for a commercial activity in the United States" as there is when a party seeks to directly attach the property of a foreign sovereign. *Connecticut Bank v. Republic of Congo*, 309 F.3d at 252–53. However, the plain language of the statute requires that the "agency or instrumentality" whose assets are to be seized be "engaged in commercial activity in the United States" in order for immunity to be unavailable under the FSIA. It is not clear on the record currently before the Court whether Gamtel is "engaged in commercial activity" in the U.S., and further discovery in this area appears to be warranted before the Court could order execution on Gamtel's assets under 28 U.S.C. § 1610.

■ Furthermore, an entity's status as an agency or instrumentality of a foreign sovereign is insufficient, without more, to establish that the entity is liable for the debts of the foreign state.[2] There

2. Both parties appear to conflate the issues of whether Gamtel is an agency or instrumentality of the Republic of Gambia and the main issue presented here—whether the assets of

exists a presumption of a separate corporate existence between a parent and its subsidiary which can only be overcome where a subsidiary is so controlled by its parent that a principal-agent relationship is created, or where "recognition of the instrumentality as an entity apart from the state would work fraud or injustice." *See First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983); *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 847–48 (D.C.Cir.2000). As a general rule, "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. at 626, 103 S.Ct. 2591. The Supreme Court articulated the rationale underlying this rule in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, stating that "the instrumentality's assets and liabilities must be treated as distinct from those of its sovereign in order to facilitate credit transactions with third parties." *Id.* at 625–26, 103 S.Ct. 2591. Therefore, in order to hold Gamtel liable for the debts of its "parent," the Republic of Gambia, plaintiffs must make an "extensive evidentiary showing that corporate formalities are almost entirely disregarded." AT & T Mot. to Dismiss Writ at 3, citing *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir.1929) (Learned Hand, J.).

The parties cite to a number of cases which they submit set forth the standards for determining whether Gamtel can be held liable for plaintiff's judgment against the Republic of Gambia. These are, for the most part, not directly on point. For instance, in *Transamerica Leasing*, the D.C. Circuit considered the question of whether a foreign state's sovereign immunity could be pierced and the *state held liable for the actions of a subsidiary* corporation, the reverse of the factual scenario presented here. *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d at 848. In so doing, our Court of Appeals examined factors such as majority stock ownership, appointment of the Board of Directors, and exercise of "direction and control" over some day-to-day activities, and concluded that these were not, standing alone, sufficient to establish a state's liability for the actions of its wholly-owned corporation under an agency theory. *See id.* at 850–851. Similarly, in *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, plaintiffs sought to hold a foreign state liable for the actions of a state-owned dairy company. *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 439, 445 (D.C.Cir.1990). In that case, this Circuit held that "mere involvement by the state in the affairs of an agency or instrumentality does not answer the question whether the agency or instrumentality is controlled by the state for the purposes of the FSIA." *Id.* at 440. However, "when a state controlled corporation implements state policies, its separate corporate existence does not shield the state from liability." *McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346, 352 (D.C.Cir.1995).

Different policy considerations are in play when a party seeks to pierce sovereign immunity to hold a state liable for

---

an agency or instrumentality of a foreign state can be attached in satisfaction of a judgment against the foreign state. Ultimately, AT & T "does not dispute that Gamtel is a parastatal enterprise, and that it appears to be largely owned by the Defendants [and] ... is most likely a 'foreign instrumentality' under the FSIA." Therefore, AT & T's main argument is that, even if Gamtel is a foreign instrumentality under the FSIA, it is not necessarily liable for the debts of its "parent," the Republic of Gambia.

an instrumentality's debt than when a party seeks to hold an instrumentality liable for the debt of a state. Nevertheless, it appears that plaintiffs must meet a high burden to hold a subsidiary foreign instrumentality such as Gamtel liable for the debts of its parent state. "During its deliberations [prior to enacting the FSIA], Congress clearly expressed its intention that duly created instrumentalities of a foreign state are to be accorded a presumption of independent status." *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. at 627, 103 S.Ct. 2591. However, in the leading case of *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, the U.S. Supreme Court held that this presumption could be overcome where "internationally recognized equitable principles mandate attribution to avoid injustice." *Id.* at 633–34, 103 S.Ct. 2591 (holding that the claim of a foreign instrumentality against a U.S. corporation was subject to a set-off for the debts of the instrumentality's parent government); *but see Banco Central de Reserva del Peru v. Riggs Nat. Bank*, 919 F.Supp. 13, 17 (D.D.C.1994) ("[a]ttachment and execution are fundamentally different from set off," attachment and execution being legal remedies for legal wrongs, and set off being an equitable remedy imposed to prevent injustice); *see also Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*, 183 F.3d at 1286 (finding Congressional foreign policy considerations insufficient to overcome presumption of separate juridical status of state instrumentality in action seeking to execute judgment against Republic of Cuba on assets of Cuban telephone company held by U.S. telephone company, but sufficient under equitable principles to justify allowing execution of judgment on state on instrumentality's assets).

Although plaintiff seeks to analogize this case to that before the Court in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, arguing that the Republic of Gambia's conduct in refusing to respond to plaintiff's action and acting "with impunity" with regard to its commercial activities is sufficient to overcome the presumption of Gamtel's juridical independence from the Republic of Gambia on equitable grounds, it does not appear that the equitable considerations in this case rise to the level of those previously recognized as sufficient to justify the relief plaintiff seeks.

The Supreme Court also suggested in *First National City Bank v. Banco Para El Comercio Exterior de Cuba* that the presumption of separate corporate existence could be overcome where "the corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," a showing plaintiff also does not appear to have made on the record before this Court. *See First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. at 629, 103 S.Ct. 2591; *see also Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*, 183 F.3d at 1287 ("plaintiff bears burden of demonstrating alter ego relationship."); *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 563 (11th Cir.1987) (100% ownership of instrumentality's stock insufficient, standing alone and absent showing that foreign state "exercises such extensive control over [instrumentality] as to warrant a finding of principal and agent," to overcome presumption of separate juridical existence).

Furthermore, the Eleventh Circuit has intimated that an instrumentality could only be held liable for the debts of its "parent" state under the FSIA where the agency was the vehicle through which the foreign state incurred the liability, which is

not the case here. *See Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*, 183 F.3d at 1286–87 (noting absence of any evidence that Cuban telephone company was involved in the conduct of the foreign state which led to entry of judgment against it); *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d at 563 (holding that the "assets of a wholly-owned national airline" are not "subject to execution to satisfy a judgment obtained against the foreign state [ ] where the airline was neither a party to the litigation nor was in any way connected with the underlying transaction giving rise to the suit."); *see also Flatow v. Alavi Found.*, 225 F.3d 653 (4th Cir.2000) (unpub'd opinion). Similarly, the U.S. Supreme Court has quoted the legislative history of FSIA as stating that "[s]ection 1610(b) will not permit execution against the property of one agency or instrumentality to satisfy judgment against another, unrelated agency or instrumentality." *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. at 627, 103 S.Ct. 2591. In this case, the judgment against the Republic of Gambia did not arise in connection with the activities of Gamtel in the U.S., if any, but rather through the conduct of a distinct entity, the Embassy of the Republic of Gambia.

In any event, in light of the above, it appears that more discovery regarding Gamtel's activities in the United States, as well as the relationship between the Republic of Gambia and Gamtel, is warranted. Accordingly, the Court will grant *nunc pro tunc* plaintiff's request for re-issuance of a Writ of Garnishment and interrogatories pursuant to § 1610(c) of the FSIA, and allow plaintiff to propound additional interrogatories which may lead to information supporting a motion for a writ of execution against Gamtel's assets.

## II. *Motion to traverse AT & T's answer*

Plaintiff moves, pursuant to D.C.Code Ann. § 16–522,[3] to traverse AT & T's answer to the written interrogatories accompanying the November 20, 2002 Writ of Attachment. Specifically, plaintiff complains that AT & T has not provided any information as to the value or amount of property or credits it holds for the benefit of Gamtel, and asks the Court to order AT & T to provide this information, as well as any other information relevant to the plaintiff's efforts to satisfy its judgment against the Republic of Gambia. AT & T opposes the motion on the grounds that it cannot be required to answer a defectively issued writ, as well as on the substantive grounds discussed in the previous section. Because AT & T is correct in arguing that a writ not issued by the Court is invalid under § 1610(b) of the FSIA, plaintiff's motion to traverse shall be **DENIED WITHOUT PREJUDICE.**

Accordingly, it is by the Court hereby

---

3. Fed.R.Civ.P. 69 dictates that

The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

DC Code § 16–522 provides that

If any garnishee answers to interrogatories that he does not have property or credits of the defendant, or has less than the amount of the plaintiff's claim, the plaintiff may traverse the answer as to the existence or amount of the property or credits, and the issue thereby made may be tried as provided by section 16–520. In such a case, where judgment is rendered for the garnishee, the plaintiff shall be adjudged to pay to the garnishee, in addition to the taxed costs, a reasonable attorney's fee. If the issue is found for the plaintiff, judgment shall be rendered for him in accordance with the finding.

**ORDERED** that AT & T's motion to dismiss the Writ of Attachment issued by the Clerk of the Court on November 20, 2002 is hereby **GRANTED;** and it is

**FURTHER ORDERED** that the Court, *sua sponte,* **DISMISSES** the Writs of Attachment and interrogatories issued by the Clerk of the Court on November 20, 2002 against Sprint International Communication and MCI Worldcom; and it is

**FURTHER ORDERED** that plaintiff's motion for judgment against AT & T Corporation is **DENIED WITHOUT PREJUDICE;** and it is

**FURTHER ORDERED** that plaintiff's motion for judgment against MCI World-Com is **DENIED WITHOUT PREJUDICE;** and it is

**FURTHER ORDERED** that plaintiff's motion to traverse the answer of AT & T is hereby DENIED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that plaintiff's request that the Court issue a Writ of Attachment against AT & T Corporation pursuant to 28 U.S.C. § 1610(c) is hereby **GRANTED.**