# Third District Court of Appeal

## State of Florida

Opinion filed April 27, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2034
Lower Tribunal No. 07-31623
_____

**C.P. Motion, Inc., and the Raymond and Selma Weisbein Irrevocable Trust,**
Appellants,

vs.

**Richard Goldblatt and Valerie Goldblatt,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Abby Cynamon, Judge.

Michael L. Wolowitz; AM Law and Gary M. Murphree, for appellants.

Akerman LLP and Lawrence D. Silverman, for appellees.

Before LAGOA, SALTER, and EMAS, JJ.

LAGOA, J.

Appellants, C.P. Motion, Inc. ("CP"), and the Raymond and Selma

Weisbein Irrevocable Trust ("WT"), appeal from an order denying CP's motion to

substitute party and a final order dismissing CP's counterclaim against Appellees, Richard Goldblatt and Valerie Goldblatt (the "Goldblatts").[1]  For the following reasons, we reverse.

## I.    FACTUAL AND PROCEDURAL HISTORY

As set forth in Goldblatt v. C.P. Motion, Inc., 77 So. 3d 798 (Fla. 3d DCA 2011), in 1999, Richard Goldblatt and Raymond Weisbein formed CP to distribute orthopedic equipment.   The parties subsequently terminated their business relationship, and on February 13, 2004, the Goldblatts and CP entered into a Settlement and Release Agreement (the "Agreement").  Under the Agreement, the Goldblatts were paid $2.7 million in cash and given $4.0 million in debt forgiveness in exchange for their ownership interests in CP.  The Goldblatts also agreed to a five-year restrictive covenant, which restricted the Goldblatts from conducting any business that competed with CP.  Paragraph 23.6 of the Agreement provides:

> This Agreement is binding upon, and shall inure to the benefit of, the parties and their respective heirs, executors, administrators, successors, and assigns.  No party may assign, delegate or otherwise transfer his, her

---

[1] This Court is authorized to review the order denying CP's motion to substitute party as Florida Rule of Appellate Procedure 9.110(h) authorizes review of "any ruling or matter occurring before filing of the notice [of appeal]." The phrase "ruling or matter" means rulings and orders "'directly related to and an aspect of the final [order]' under review"—in this case the dismissal of CP's counterclaim. Portis v. Seatruck, Inc., 98 So. 3d 1234, 1235 (Fla. 3d DCA 2012) (quoting Cygler v. Presjack, 667 So. 2d 458, 461 (Fla. 4th DCA 1996)); see also, Deutsche Bank Nat'l Trust Co. v. Plageman, 133 So. 3d 1199, 1200 (Fla. 2d DCA 2014).

> or its rights, duties or obligations hereunder without the prior written consent of the other parties, which consent shall not be unreasonably withheld.

The Goldblatts and CP each accused the other of breaching the Agreement, and in 2007, the Goldblatts filed suit against CP. CP filed a counterclaim alleging that the Goldblatts breached the restrictive covenant.[2]

While the lawsuit between the Goldblatts and CP was proceeding, WT commenced an action in Miami-Dade County to enforce a secured loan to CP (the "WT action"). On April 3, 2009, the trial court in the WT action entered an agreed final judgment for money damages and foreclosing security interest, finding that WT had a valid and enforceable security interest in all of CP's assets, and foreclosing that security interest in favor of WT. The trial court directed the sale of the assets in a commercially reasonable manner, and CP's assets were subsequently transferred to WT on May 11, 2009.

Meanwhile, on March 31, 2009, in the lawsuit between the Goldblatts and CP, the trial court entered an order granting summary judgment in favor of CP on CP's motion for summary judgment as to liability under its counterclaim for breach of contract against Richard Goldblatt. In its order, the trial court found that Richard Goldblatt "admitted in sworn deposition testimony that he has violated the non-competition agreement at issue in this suit." The trial court subsequently

---

[2] The counterclaim contained three counts: breach of the Agreement (Count I), permanent injunction (Count II), and misappropriation of trade secrets (Count III).

3

entered final judgment against the Goldblatts on June 21, 2010, finding them jointly and severally liable in the amount of $4,969,339.

The Goldblatts appealed the final judgment to this Court. See Goldblatt, 77 So. 3d at 799. This Court affirmed in part, reversed in part, and remanded for further proceedings. Specifically, we affirmed the final judgment—including the trial court's conclusion that the restrictive covenant was enforceable and that the Goldblatts were jointly and severally liable—but reversed the judgment award and remanded "for a proper determination of the actual damages." Id. at 801.

On March 15, 2011, CP filed for Chapter 7 bankruptcy protection. On March 14, 2012, the Chapter 7 Trustee of the CP bankruptcy estate, pursuant to 11 U.S.C. § 554, formally noticed the abandonment of the counterclaims and claims asserted against the Goldblatts.

On remand from this Court's opinion in Goldblatt, CP filed a motion to substitute party under Florida Rule of Civil Procedure 1.260(c). CP sought to substitute WT as the defendant/counter-plaintiff in place of CP. CP argued that WT was the sole owner of all claims against the Goldblatts as a result of the transfer of CP's assets to WT via the WT action and the bankruptcy Trustee's abandonment of CP's counterclaim and claim. In response, the Goldblatts argued that WT could not enforce the Agreement because the transfer of the Agreement that occurred in the WT action violated the terms of paragraph 23.6 of the Agreement and section 542.335(1)(f)2, Florida Statutes (2013).

After a hearing, the trial court denied the motion to substitute. The trial court found that WT could not "enforce that agreement as an assignee" because neither WT nor CP obtained consent from the Goldblatts to assign or transfer the Agreement as required by paragraph 23.6 of the Agreement and section 542.335(1)(f)2, Florida Statutes (2013). The Goldblatts then filed a motion to dismiss the counterclaim arguing that because the trial court denied the motion to substitute and CP had abandoned all interest in its counterclaim when it filed for bankruptcy, CP's counterclaim should be dismissed. Specifically, the Goldblatts argued that "there is no plaintiff at this point." The trial court granted the motion and dismissed CP's counterclaim on July 24, 2014. This appeal followed.

## II.    STANDARD OF REVIEW

The standard of review of an order dismissing a complaint is de novo. Mender v. Kauderer, 143 So. 3d 1011, 1013 (Fla. 3d DCA 2014).

## III.    ANALYSIS

CP and WT argue that the trial court erred in concluding that, because neither obtained the Goldblatts' consent to the judicial transfer of CP's assets to WT in the WT action, WT is not entitled to seek damages for breach of the Agreement. Their argument has merit, as neither paragraph 23.6 of the Agreement nor section 542.335 preclude the transfer or assignment of a chose in action.[3]

---

[3] A "chose in action" is the "right to bring an action to recover a debt, money, or thing." Black's Law Dictionary (9th ed. 2009).

5

Section 542.335(1)(f)2 places limits on the enforcement of a restrictive covenant by an assignee or successor:

> (1) Notwithstanding s. 542.18 and subsection (2), enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited. In any action concerning enforcement of a restrictive covenant:
>
> . . . .
>
> (f) The court shall not refuse **enforcement of a restrictive covenant** on the ground that the person seeking enforcement is a third-party beneficiary of such contract or is an assignee or successor to a party to such contract, provided:
>
> . . . .
>
> 2. In the case of an assignee or successor, **the restrictive covenant expressly authorized enforcement by a party's assignee or successor**.

(emphasis added).

Paragraph 23.6 of the Agreement, in turn, provides as follows:

> This Agreement is binding upon, and shall inure to the benefit of, the parties and their respective heirs, executors, administrators, successors, and assigns. **No party may assign, delegate or otherwise transfer his, her or its rights, duties or obligations hereunder without the prior written consent of the other parties, which consent shall not be unreasonably withheld.**

(emphasis added).

6

Florida law distinguishes between the assignment of performance due under a contract and the assignment of a claim for damages (or a chose in action) arising from breach of contract. See, e.g., Cordis Corp. v. Sonics Int'l, Inc., 427 So. 2d 782 (Fla. 3d DCA 1983). In Cordis, this Court dealt with whether Mexcor's claim for commissions flowing from the termination of its distributorship agreement with Sonics International, Inc., could be assigned to a third party. The agreement at issue in Cordis provided that the "rights of Distributor [Mexcor], hereunder shall not be assigned or transferred, either voluntarily or by operation of law, without [Sonics International's] written consent." Id. at 782. This Court held that this language in the agreement had "no effect upon Mexcor's well-established right freely to assign its chose in action for the damages caused by Sonics' breach." Id. at 783. As this Court explained:

> It is clear that, while contractual provisions against assignability are generally enforceable in Florida, Troup v. Meyer, 116 So. 2d 467 (Fla. 3d DCA 1959), the clause relied on by Sonics is inapplicable to the present situation. One which, like this, forbids only the assignment of a party's "rights" under a contract simply does not preclude the assignment of an accrued claim for damages arising from its breach.

Id.; see also Aldana v. Colonial Palms Plaza, Ltd., 591 So. 2d 953 (Fla. 3d DCA 1991) (holding that anti-assignment clause did not prevent assignment of right to receive payments due); Charles L. Bowman & Co. v. Erwin, 468 F.2d 1293, 1297 (5th Cir. 1972) ("The law draws a distinction . . . between assignment of

7

performance due under a contract and assignment of the right to receive contractual payments."); Rosecrans v. William S. Lozier, Inc., 142 F.2d 118, 124 (8th Cir. 1944) ("The prohibition of the contract against assignment is against an assignment of the rights and privileges under the contract. This prohibition of assignment does not, however, prohibit the assignment of a claim for damages on account of breach of the contract.").

Similarly, in H & J Contracting, Inc. v. Jacobs Engineering Group, Inc., No. 15-61462, 2015 WL 6504543, at *3 (S.D. Fla. Oct. 28, 2015), the U.S. District Court for the Southern District of Florida held that the anti-assignment clause in an agreement did not prohibit assignment of a claim for damages due to breach of contract. The court reasoned that a clause which included the language that "[n]either this Agreement nor any interest herein shall be assigned, transferred, or encumbered by either party" referred to an interest in the performance of the agreement, not to recovery of damages for breach of the agreement. Id. at *1. Because the agreement did not prevent assignment of a claim for damages arising from breach of the agreement, the court in H & J Contracting denied the defendant's motion to dismiss. Id. at *3.

Here, as in Cordis and H & J Contracting, the language in paragraph 23.6 does not prevent an assignee or transferee from pursuing an accrued claim for damages arising from breach of the Agreement. That WT is seeking to proceed on a chose in action for an accrued claim for damages, rather than to enforce the

8

restrictive covenant contained in the Agreement, is evident from the fact that the Goldblatts' breach of the Agreement was established by the trial court order *prior to* the date of the transfer of CP's assets to WT. In its March 31, 2009, order granting summary judgment as to liability, the trial court found that Richard Goldblatt "admitted in sworn deposition testimony that he has violated the non-competition Agreement at issue in this suit," in an attempt to "mitigate" damages the Goldblatts believed due to them from CP. On April 3, 2009, therefore, WT acquired in the WT action CP's claim against the Goldblatts for money damages arising from the Goldblatts' breach of the Agreement's restrictive covenant, not CP's right to enforce the terms of the restrictive covenant itself. That transfer was not precluded by section 542.335 or paragraph 23.6 of the Agreement.

We now turn to the trial court's dismissal of CP's counterclaim. First, as explained above, the April 3, 2009, transfer via judicial foreclosure effected a legally permissible transfer to WT of CP's chose in action against the Goldblatts for money damages arising from the Goldblatts' breach of the Agreement's restrictive covenant. The trial court therefore relied on an erroneous basis to deny CP's motion to substitute party.

Second, the fact that CP filed for bankruptcy did not bar it from proceeding on its counterclaim. On March 14, 2012, pursuant to 11 U.S.C. § 554, the Chapter 7 Trustee of the CP bankruptcy estate formally noticed the abandonment of the counterclaims and claims asserted against the Goldblatts. Once a bankruptcy

9

trustee formally abandons a cause of action, the cause of action is re-vested with the debtor. See In re VonGrabe, 332 B.R. 40, 44 (Bankr. M.D. Fla. 2005); In re Pilz Compact Disc, Inc., 229 B.R. 630, 638 (Bankr. E.D. Pa. 1999) ("Abandonment . . . removes property from the bankruptcy estate and returns the property to the debtor as though no bankruptcy occurred." (quoting 3 Norton Bankruptcy Law and Practice 2d, § 53.1, at 53-2 to 53-4 (1997) (footnotes omitted))). The trial court therefore erred in dismissing CP's counterclaim, and the counterclaim must be permitted to proceed for a proper determination of actual damages resulting from the Goldblatts' admitted breach of the Agreement (*i.e.*, the issue on remand from our prior decision in this Goldblatt).

As noted, the trial court denied CP's motion to substitute based on an erroneous conclusion of law. On remand, however, the trial court is not required to substitute WT for CP as the defendant/counter-plaintiff. CP filed its motion to substitute party pursuant to Florida Rule of Civil Procedure 1.260(c). That rule provides, in part:

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

As our sister court has stated in the context of the transfer of a chose in action:

> Rule 1.260(c) addresses "any transfer of interest," *which necessarily includes the transfer of interest in a chose of action* through a court-ordered auction. As such,

10

> under the plain language of the rule, after the transfer, the action may be continued in the name of the plaintiff. Substitution is not necessary, but the trial court may allow substitution upon motion by a party.

Levine v. Gonzalez, 901 So. 2d 969, 972-73 (Fla. 4th DCA 2005) (emphasis added); see also Schmidt v. Mueller, 335 So. 2d 630, 631 (Fla. 2d DCA 1976) (stating that once trial judge had concluded that transfer of cause of action had occurred, "two alternatives were available to the court: (1) to allow the action to be continued in the name of the plaintiff . . . or (2) to allow [the corporation to which the cause of action was transferred] to be either substituted for or joined with the original party-plaintiff"); Miami Airlines, Inc. v. Webb, 114 So. 2d 361, 363 (Fla. 3d DCA 1959) ("[W]e hold that two alternatives are presented where there is a transfer of the cause of action pending suit. The action may be continued in the name of the original party, or the court may upon application allow substitution of the transferee.").

Finally, we note that transfer of an interest in a cause of action cannot be the basis of dismissal of the action. See Sun States Utils., Inc. v. Destin Water Users, Inc., 696 So. 2d 944, 945 (Fla. 1st DCA 1997) ("[T]ransfer of an interest in a cause of action pending litigation may be the basis for the substitution of parties, but not dismissal of the action."); Schmidt, 335 So. 2d at 631 (finding that trial court erred in dismissing plaintiff's case on ground that the real party in interest was not before the trial court when during trial plaintiff assigned assets to corporation);

11

<u>Miami Airlines</u>, 114 So. 2d at 363 ("But the court has no discretion to terminate the action and to enter adverse judgment on the merits solely because a transfer of interest has been made pending the suit."); <u>see also</u> <u>Gas Dev. Corp. v. Royal Oak Builders, Inc</u>., 253 So. 2d 738 (Fla. 4th DCA 1971). Therefore, on remand, the matter may proceed either in the name of CP, or if the trial court orders, WT may be substituted as the defendant/counter-plaintiff.

IV.  CONCLUSION

We conclude that the trial court erred in in dismissing CP's counterclaim, which dismissal was based on its prior order denying CP's motion to substitute WT as a party. The 2009 transfer of CP's claim for damages from the Goldblatts' breach of contract constituted a transfer of a chose in action, which was not precluded by either section 542.335(1)(f)2, Florida Statutes (2013),  or the Agreement.  Moreover, the bankruptcy Trustee's abandonment of CP's counterclaim and claims against the Goldblatts did not terminate those claims but instead re-vested the cause of action with CP. Accordingly, we reverse the order dismissing CP's counterclaim and the order denying motion to substitute, and remand for a proper determination of actual damages in accordance with this Court's instructions in <u>Goldblatt</u>, 77 So. 3d at 801.

Reversed and remanded for further proceedings.