BERGER, J.
SC Services, LLC, the assignee of a chose in action[1] filed by Spa Creek Services, LLC, appeals the trial court's order granting final summary judgment to S.W. Cole, Inc., and S.W. Cole's officers, Jerry Cole, Sue C. Cole, Wendy Cole Lanning, and David W. Lanning (collectively "Appellees"), on Spa Creek's amended complaint for tortious interference, breach of contract, and civil conspiracy, which arose from alleged violations of confidentiality, non-solicitation, and non-competition agreements entered into by the parties. Because the trial court erred in concluding (a) that consent was required for assignment of the chose in action and (b) that SC Services could not maintain the action after it dissolved itself in Delaware, we reverse the trial court's entry of summary judgment for S.W. Cole and Jerry Cole on those grounds.[2]
A trial court's entry of summary judgment is reviewed de novo. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Id. (citing Menendez v. Palms W. Condo. Ass'n, 736 So.2d 58 (Fla. 1st DCA 1999) ).
S.W. Cole is engaged in the pest control business throughout Central Florida. The additional Appellees in this appeal are officers and directors of S.W. Cole with Jerry Cole serving as president. Spa Creek was a limited liability company also engaged in the pest control business in Central Florida. In 2002, Spa Creek and S.W. Cole entered into an asset purchase agreement whereby Spa Creek purchased all the assets of S.W. Cole's branch offices in Lakeland, New Port Richey, Dade City, Ocala, and Leesburg. The agreement contained merger and assignment clauses. The assignment clause stated:
Assignment. Neither this Agreement nor any obligation associated herewith may be assigned to any third party without the prior written consent of all parties to this Agreement, except that Purchaser may assign all obligations under this Agreement to a third party purchaser of the principal assets acquired *733 hereunder, subject to payment of all obligations due to Seller or Cole as a condition of closing.
As part of the asset purchase agreement, Appellees were required to execute confidentiality, non-solicitation, and non-competition agreements.[3] Under the agreements, Appellees were precluded from engaging in the pest control business in Lake, Pasco, Marion, Polk, and Alachua counties. While S.W. Cole was permitted to conduct business in other counties, it could not do so in a way that tortiously interfered with Spa Creek and its employees. S.W. Cole was also barred from hiring or soliciting its former employees to leave Spa Creek and work for any other entity.
Each of the confidentiality, non-solicitation, and non-competition agreements contain, the following assignment clause:
Assignment; Successors, and Assigns, etc. Neither Seller nor Purchaser may make any assignment of this Agreement or any interest herein, by operation of law or otherwise, without the prior written consent of the other party; provided that Purchaser may assign this Agreement without the consent of Seller in the event that Purchaser shall effect a reorganization, consolidate with or merge into any other corporation, partnership, organization, or other entity, or transfer all or substantially all of its properties or assets relating to the operation of the business in the Territory to any other corporation, partnership, organization or other entity. This Agreement shall inure to the benefit of and be binding upon Purchaser and Seller, their respective successors, executors, administrators, heirs and permitted assigns.
Spa Creek later sued S.W. Cole and Appellees for tortiously interfering with Spa Creek's non-compete agreements, tortiously interfering with its business relationship, civil conspiracy, and breach of the non-compete and non-solicitation agreements. After doing so, Spa Creek sold nearly all of its assets to another pest control company while retaining the chose in action at issue in this case. Later, Spa Creek assigned its remaining assets and liabilities, including the lawsuit against S.W. Cole and Appellees, to SC Services, a special purpose entity formed as a limited liability company in Delaware for the purpose of prosecuting the lawsuit.[4]
In December 2012, while the suit was still pending, SC Services was dissolved through the filing of a certificate of cancellation in Delaware. Thereafter, Appellees filed a motion for summary judgment alleging, inter alia , that the assignment of the chose in action against them did not survive SC Services' dissolution. Appellees also argued that the assignment from Spa Creek to SC Services was void because the assignment *734 clauses in the asset purchase agreement and the confidentiality, non-solicitation, and non-competition agreements required the prior written consent of all parties to the agreement and Spa Creek failed to obtain consent from S.W. Cole and Jerry Cole prior to the assignment. The trial court agreed with Appellees and granted summary judgment.
In concluding summary judgment should be granted in favor of S.W. Cole and Jerry Cole, the trial court found that the assignment clauses in the asset purchase agreement, and in the confidentiality, non-solicitation, and non-competition agreements prevented assignment of the chose in action without their consent and that SC Services could no longer maintain the action because it was dissolved in Delaware in December 2012.[5] This was error.
Contractual language requiring consent for the assignment of contracts, contractual interests, rights, and obligations has no effect on the assignment of a chose in action for breach of the contract. C.P. Motion, Inc. v. Goldblatt, 193 So.3d 39, 43 (Fla. 3d DCA 2016) ; Aldana v. Colonial Palms Plaza, Ltd., 591 So.2d 953, 955 (Fla. 3d DCA 1991) ; Paley v. Cocoa Masonry, Inc., 433 So.2d 70, 70-71 (Fla. 2d DCA 1983) ("[T]he prohibition of a contract against assignment is against an assignment of rights and privileges under the contract. That prohibition does not prohibit the assignment of a claim for damages on account of breach of contract."). "[C]hoses in action arising out of contract are assignable and may be sued upon and recovered by the assignee in his own name and right." Spears v. W. Coast Builders' Supply Co., 101 Fla. 980, 133 So. 97, 98 (1931) (citing Robinson v. Springfield Co., 21 Fla. 203 (Fla. 1885) ).
S.W. Cole argues that because there had been no determination of liability at the time of the assignment, the chose in action was not an accrued claim for damages. However, a distinction exists "between the assignment of performance due under a contract and the assignment of a claim for damages." C.P. Motion, Inc., 193 So.3d at 43 (citing Cordis Corp. v. Sonics Int'l, Inc., 427 So.2d 782, 782-83 (Fla. 3d DCA 1983) ).
The language in the confidentiality, non-solicitation, and non-competition agreements required consent for assignments "of this Agreement or any interest herein" with the exception of when Spa Creek's principal assets were acquired by another corporation. The assignment clause in the asset purchase agreement required consent for assignments of the agreement and any obligations associated with the agreement. The agreement itself relates to performance and does not relate to the chose in action for the breach of contract claim. See C.P. Motion, Inc., 193 So.3d at 43 ; Aldana, 591 So.2d at 953 ; Paley, 433 So.2d at 70-71 ; Cordis Corp., 427 So.2d at 783. Indeed, the only obligation under the asset purchase agreement relevant to this case was Appellees' obligation to execute non-competition agreements. The alleged violations of the asset purchase agreement and of the confidentiality, non-solicitation, and non-competition agreements occurred before the assignment, as the complaint had already been filed before the assignment was made. Thus, the assignment was only of the chose in action for breach of the agreements and not of the agreements themselves. See C.P. Motion,Inc., 193 So.3d at 43 ; Aldana, 591 So.2d at 953 ; Paley, 433 So.2d at 70-71 ; CordisCorp., 427 So.2d at 783.
Here, the chose in action for breach of contract accrued at the time of the alleged breach, and the chose in action for tortious interference with contract accrued when S.W. Cole allegedly solicited and hired its former employees away from Spa Creek, and both occurred before the original complaint was filed in January 2004. See Tech. Packaging,Inc. v. Hanchett, 992 So.2d 309, 313 (Fla. 2d DCA 2008) (citing *735 Holiday Furniture FactoryOutlet Corp. v. Dep't of Corr., 852 So.2d 926, 928 (Fla. 1st DCA 2003) ); see also QualityOptical of Jonesboro, Inc. v. Trusty Optical, LLC, 365 Ark. 106, 225 S.W.3d 369, 372 (2006). Therefore, the accrued choses in action were assignable, and the trial court erred as a matter of law in granting summary judgment on this point. See C.P. Motion, Inc., 193 So.3d at 43 ; Aldana, 591 So.2d at 953 ; Paley, 433 So.2d at 70-71 ; Cordis Corp., 427 So.2d at 783.
The trial court also erred when it relied on Delaware law to conclude that SC Services was precluded from prosecuting this case after it filed its certificate of cancellation in Delaware. As stated earlier, SC Services voluntarily dissolved itself in Delaware in December 2012. In Delaware, the dissolution of the corporation and the filing of the certificate of cancellation are separate steps: dissolution occurs first, followed by winding up of corporate affairs, and finally the certificate of cancellation is filed. Del. Code tit. 6, §§ 18-203(a), (b), 18-803(b) (2012). Delaware permits the dissolved limited liability company to "prosecute and defend suits, whether civil, criminal or administrative" only until the filing of the certificate of cancellation. Del. Code tit. 6, § 18-803(b) (2012). The final effect of the filing of the certificate of cancellation is made clear by the provision in the statute of a means to correct the premature filing of the certificate of cancellation so as to re-enable the dissolved limited liability company to finish winding up its affairs. Del. Code tit. 6, § 18-203(b). In Florida, prior to 2014, the cancellation of the articles of organization was an administrative step that immediately followed dissolution but which did not affect any pending court proceedings involving the dissolved limited liability company. §§ 608.446-.447, Fla. Stat. (2012). The new limited liability act, adopted in 2014, provides for the filing of a statement of termination after the limited liability company has finished winding up its affairs, but the act does not prohibit the dissolved entity from continuing to prosecute or defend court proceedings after that point. § 605.0709(7), Fla. Stat. (2014). Thus, the cancellation of the articles of organization in Florida (before 2014) and the filing of a statement of termination (after 2014) simply do not carry the same consequences that the filing of the certificate of cancellation does in Delaware. See § 605.0709(7), Fla. Stat. (2014) ; §§ 608.446-.447, Fla. Stat. (2012) ; Selepro, Inc. v. Church, 17 So.3d 1267, 1268-70 (Fla. 4th DCA 2009).
Under section 605.0709(2)(b) 2., Florida Statutes (2014), a dissolved limited liability company may "[p]rosecute and defend actions and proceedings, whether civil, criminal, or administrative." Section 605.0707(4), Florida Statutes (2014), states that "[u]pon the filing of the articles of dissolution, the limited liability company shall cease conducting its business and shall continue solely for the purpose of winding up its affairs in accordance with s[ection] 605.0709, except for the purpose of lawsuits, other proceedings, and appropriate action as provided in this chapter." Section 605.0717(1)(b), Florida Statutes (2014), states that the dissolution of a limited liability company does not "[p]revent commencement of a proceeding by or against the limited liability company in its name. ..."
While section 605.0904(1), Florida Statutes (2014), states that "[a] foreign limited liability company transacting business in this state or its successors may not maintain an action or proceeding in this state unless it has a certificate of authority to transact business in this state," the statutes that require a certificate of authority to maintain court actions in Florida only apply when the foreign corporation is actively transacting business.
*736 Selepro,Inc., 17 So.3d at 1270 (citing Nat'l Judgment Recovery Agency, Inc., 826 So.2d 1034, 1036-37 (Fla. 4th DCA 2002) (Farmer, J. dissenting)). Maintaining, defending, or settling any court proceeding is not considered to be transacting business. §§ 605.0905(1)(a), 607.1501(2)(a), Fla. Stat. (2014). Neither is winding up affairs. Selepro, Inc., 17 So.3d at 1270 (citing PBF of Fort Myers, Inc. v. D & K P'ship, 890 So.2d 384 (Fla. 2d DCA 2004) ).[6]
Accordingly, we reverse the order granting summary judgment in favor of S.W. Cole and Jerry Cole on these issues and remand for further proceedings. In all other respects, we affirm.
AFFIRMED, in part, REVERSED, in part, and REMANDED.
WALLIS, J., concurs.
ORFINGER, J., concurs, with opinion.

"A 'chose in action' is a 'personal right not reduced into possession, but recoverable by a suit at law .... A right to receive or recover a debt, demand, or damages on a cause of action ex contractu or for a tort or omission of a duty.' " Myd Marine Distrib.,Inc. v. Int'l Paint Ltd., 201 So.3d 843, 845 (Fla. 4th DCA 2016) (quoting Puzzo v. Ray, 386 So.2d 49, 50 (Fla. 4th DCA 1980) (omission in original)). It is "the 'right to bring an action to recover a debt, money, or thing.' " One Call Prop. Servs., Inc. v. Sec. First Ins.Co., 165 So.3d 749, 752-53 n.2 (Fla. 4th DCA 2015) (quoting Chose in Action , Black's Law Dictionary (9th ed. 2009)). A judgment also constitutes a cause of action or chose in action. Crane v. Nuta, 157 Fla. 613, 26 So.2d 670, 671 (1946). Thus, in this context, there is no difference between a cause of action and a chose in action.

We find no error in the grant of summary judgment in favor of Appellees, Sue C. Cole, Wendy Cole Lanning, and David W. Lanning, and we affirm entry of final summary judgment in their favor without further discussion.

Pursuant to the terms of the asset purchase agreement, a breach of the non-compete agreement is a breach of the asset purchase agreement. The agreements also state that they are enforceable by Spa Creek, its successors, and assigns.

After the assignment, SC Services filed a motion to substitute itself as the party plaintiff in place of Spa Creek under Florida Rule of Civil Procedure 1.260(c). The motion was granted.

The trial court acknowledged that Delaware law permitted an erroneously filed certificate of cancellation to be corrected but found that SC Services had not done so.

Regardless, dismissal is not the proper remedy for non-compliance with the certificate of authority, as a stay is appropriate until the limited liability company comes into compliance or fails to comply. See § 605.0904(3), Fla. Stat. (2014) ; Super Prods., LLC v. Intracoastal Envtl., LLC, 210 So.3d 240, 241-42 (Fla. 2d DCA 2017).