**BANCO CENTRAL DE RESERVA DEL PERU, Plaintiff,**

v.

**The RIGGS NATIONAL BANK OF WASHINGTON, D.C., Defendant.**

**The RIGGS NATIONAL BANK OF WASHINGTON, D.C., Plaintiff,**

v.

**The REPUBLIC OF PERU, et al., Defendants.**

**Civil Action No. 88–3327 (HHG).**

United States District Court, District of Columbia.

Dec. 12, 1994.

Daniel Ben Silver, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, Mark Alan Cymrot, Baker & Hostetler, Washington, DC, Thomas O. Gorman, Porter, Wright, Morris & Arthur, Washington, DC, for Banco Central de Reserva del Peru.

Richard H. Sauer, Sullivan & Cromwell, Washington, DC, David Gerard Feher, Weil, Gotshal & Manges, New York City, Margaret Kolodny Pfeiffer, Sullivan & Cromwell, New York City, for Riggs National Bank of Washington, DC.

Mark Alan Cymrot, Baker & Hostetler, Washington, DC, for The Republic of Peru and Banco Central de Reserva del Peru.

Richard Lee Cys, Davis, Wright & Tremaine, Washington, DC, for Banco de la Nacion, Corporacion Financiera de Desarrollo S.A. and Banco Popular del Peru.

## Opinion

HAROLD H. GREENE, District Judge.

Plaintiff, Banco Central de Reserva del Peru ("BCR") seeks to recover a $2 million dollar deposit placed with the Riggs National Bank of Washington, D.C. Defendant Riggs has filed a counterclaim requesting that the Court declare that it properly set off the deposit against outstanding debts. The parties have filed cross motions for summary judgment.

## Background

In the early 1980s, Riggs made loans to Banco de la Nacion, Corporacion Financeria de Desarrollo S.A. ("COFIDE"), and Banco Popular del Peru ("BPP"), all of which are wholly-owned entities of the Republic of Peru. The loans totalled approximately $6 million. In 1983, Riggs renewed the loans pursuant to the restructuring of the Republic of Peru's debt. Peru unconditionally guaranteed the repayment of the loans upon demand. In addition, the then-President of Peru's External Debt Committee and the President and Chairman of the Board of Banco de la Nacion, Mr. Blacker–Miller, promised to maintain a $2 million deposit in the name of Banco de la Nacion with Riggs until the debt had been repaid.

Approximately one month after Mr. Blacker–Miller made this commitment, Riggs received a $1 million deposit from BCR. Riggs communicated to Mr. Blacker–Miller that it had thought the guarantee-deposit would be maintained by Banco de la Nacion. An additional month later, Riggs received another $1 million deposit from BCR. This deposit was accompanied by a Telex from Hector Neyra, the Manager and Director of International Operations of BCR, that stated, "we are pleased to make an additional deposit in your distinguished bank in the amount of one million dollars, as agreed with the Comite de la Dueda Externa del Peru [Foreign Debt Committee of Peru]."

In 1984 the loans became due, but Peru requested that Riggs extend the maturity dates. Riggs did so, extending the maturity dates periodically. BCR continued to maintain the $2 million deposit. In November of 1985, BCR instructed Riggs to cancel the deposit. Riggs thus demanded repayment of the $6 million in loans from the individual debtor banks, and then from the Republic of Peru as guarantor of the loans. The loans were not repaid. Riggs then executed a setoff by applying the BCR deposit, which at the time amounted to $2,320,303.08, to the obligations of the Republic of Peru under its guaranty.

BCR brought suit in this Court requesting recovery of its deposit from Riggs on the grounds that the setoff was improper. Riggs seeks to have this Court declare that the setoff was proper.

## I

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted when "there is no genuine issue of any

material fact ... and the moving party is entitled to judgment as a matter of law." BCR sets forth three significant reasons as to why Riggs' setoff was improper. First, BCR contends that the prerequisites for a bank's setoff of a debtor's deposit were not met in this case. Second, it maintains that the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, immunizes BCR's deposit from setoff. Finally, it argues that BCR could not have made the deposit to guarantee the other banks' loans because such a guarantee is precluded by Peruvian law.

## II

■ A bank may set off deposits against the indebtedness of a depositor where: (1) the debt to the bank has matured; and (2) there is mutuality between the debtor and the creditor and between the debt and the deposit. *See, e.g., Martens v. Hadley Memorial Hospital*, 729 F.Supp. 1391, 1396 (D.D.C. 1990). The parties do not contest that the debts had matured. What they do dispute is whether mutuality existed.

■ BCR contends that the deposit it maintained with Riggs was for its own benefit, and was not placed to satisfy Mr. Blacker–Miller's commitment. Allegedly, Riggs knew that the account was for BCR's own benefit, rather than as a guarantee of the other Peruvian banks' debts. The accounts were opened in BCR's name, not in the name of Banco de la Nacion, as had been agreed. Additionally, the Riggs loan committee did not categorize the deposit as "collateral" for the other loans. Thus, as there was no connection between BCR's deposit and the other banks' loans, there was no mutuality between the deposit and the debt.

■ This argument is premised on the fact that BCR and the other Peruvian banks are separate juridical entities as set up by Peruvian law. BCR is the central bank and monetary authority for Peru. Banco de la Nacion is the fiscal agent of Peru; its shares are wholly owned by the Republic. BPP and COFIDE are also both wholly owned by the Republic. As a general rule, courts must give great deference to the intent of foreign governments to establish separate entities. "[G]overnment instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626–27, 103 S.Ct. 2591, 2599–600, 77 L.Ed.2d 46 (1983) (*Bancec*). Thus, BCR maintains, despite the fact that all the banks involved are operated by the Peruvian government, Riggs cannot treat a deposit placed by BCR as a deposit maintained by Banco de la Nacion.

There is an exception to the general rule, however, where treating an entity as separate from its government "would work fraud or injustice." *Id.* at 629, 103 S.Ct. at 2601. Riggs extended the loans of COFIDE, Banco de la Nacion, and BPP in exchange for a guaranty by Peru. Along with this guaranty, Peru agreed to deposit $2,000,000 in the name of Banco de la Nacion with Riggs until the deposit had been paid. The parties do not dispute this. A deposit was never made by Banco de la Nacion. At approximately the time Riggs expected the deposit from Banco de la Nacion, however, it received two $1 million deposits from BCR. The telex accompanying the second of those deposits referenced the agreement with Peru's external debt committee. Riggs is not asserting that BCR and the Republic of Peru are one entity for all purposes, but only for purposes of this transaction. And there is evidence, the telex from Mr. Neyra, that the government of Peru chose to complete its transaction through BCR. BCR cannot now disassociate itself from the Republic of Peru, circumventing the entire purpose of the deposit and guaranty. This would work injustice on Riggs. The Court therefore finds that the deposit placed by BCR was that committed to by the External Debt Committee. Despite the fact that it was not in the name of Banco de la Nacion, mutuality existed between the debt and the deposit.

## III

■ BCR contends that, even if the general requirements for a setoff are met in this case, there are principles of law and equity

that preclude enforcement of the setoff. First, BCR alleges that the setoff violates the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* ("FSIA"). The FSIA codifies the immunity from suit of foreign governments acting in their governmental capacity. Specifically, section 1611(b) provides that, "the property of a foreign state shall be immune from attachment and from execution, if—(1) the property is that of a foreign central bank or monetary authority held for its own account, . . . ." BCR contends that the FSIA's immunity from attachment and execution extends to immunity from setoff. Thus, whether or not the requirements of maturity and mutuality were met, the FSIA precludes Riggs from executing a setoff against BCR's deposit.

■ Section 1611(b)(1), however, does not apply to the case at hand for two reasons. First, that section provides for immunity from attachment and execution, not immunity from setoff. Attachment and execution are fundamentally different from setoff. The former are legal remedies to legal wrongs, whereas the latter is a remedy that rests in equity. *See, e.g., Frazier v. Marine Midland Bank,* 702 F.Supp. 1000, 1003 (W.D.N.Y. 1988) (holding that the Social Security Act, 42 U.S.C. § 407, which exempts social security benefits from *"execution,* levy, *attachment,* garnishment or other legal process," does not exempt those benefits from setoff. (emphasis added)). When § 1611 immunizes BCR from attachment and execution, it does not speak to BCR's exposure to setoff.

■ Moreover, even if § 1611 were to extend to setoffs, it would still not apply to the setoff at issue in this case. Section 1611 covers property of a foreign bank "held for its own account." In other words, it exempts only those funds "used or held with central banking activities, as distinguished from funds used solely to finance the commercial

transactions of other entities or of foreign states." H.Rep. 94–1487, 94th Cong., 2d Sess. 31 (1976) U.S.Code Cong. & Admin.News 2886, 2925. The $2 million deposit, as stated above, was placed by BCR to guarantee the loans extended to BPP, COFIDE, and Banco de la Nacion. In other words, it was placed to finance the commercial transactions of other entities, not as part of BCR's central banking activities. Thus, the § 1611 exemption does not apply and the FSIA does not bar Riggs' action.[1]

## IV

■ BCR further contends that, even if it had intended that the $2 million deposit guarantee the loans to COFIDE, BPP, and Banco de la Nacion, it could not be treated as such by Riggs because such a deposit would violate Peruvian law. BCR is an autonomous independent entity that is separate and distinct from the Republic and any other state-owned enterprise. The laws that govern BCR prohibit the use of its funds for purposes other than those of a central bank. Notably, BCR's funds may not be used to guarantee the obligations of another person.

■ The ramifications of BCR's action under Peruvian law, however, are of no consequence in this case. "Acts of foreign governments purporting to have extraterritorial effect . . . should be recognized by the courts only if they are consistent with the law and policy of the United States." *Allied Bank International v. Banco Credito Agricola de Cartago,* 757 F.2d 516, 522 (2d Cir.1985). The deposit with Riggs was clearly intended to have extraterritorial effect—it was an extraterritorial act. As it would be inconsistent with U.S. law to not honor Riggs' setoff, Peruvian law cannot shield BCR from actions it took that it intended to have effect in the United States.[2]

---

1. The only immunity BCR could claim, then, is under § 1609, which provides a general immunity from attachment, arrest, and execution for property of a foreign state. Even if this immunity were to extend to setoffs, it would not apply to BCR's deposit. Under § 1610(d)(2), the property of a foreign state is not immune from attachment designed to secure satisfaction of a judgment that

may ultimately be entered against the foreign state, such as the judgment Riggs seeks here.

2. The Court also finds no merit in BCR's claim that, even under United States law, Riggs was not entitled to rely on Mr. Blacker–Miller's agreement because Mr. Blacker–Miller had no authority to bind BCR. Mr. Blacker–Miller did not bind BCR; Mr. Neyra, Manager and Director

**18**

## V

In sum, then, Riggs' setoff met the requirements of maturity and mutuality. BCR's deposit was not immune from setoff under the FSIA, nor does Peruvian law shield that deposit from setoff. Riggs' motion for summary judgment is being granted by an Order issued contemporaneously herewith.[3]

---

of International Relations did in his telex accompanying the second $1 million deposit.

**3.** Because the Court is granting summary judgment in favor of Riggs, it will not consider the merits of Riggs' motion to dismiss for lack of prosecution.