# Third District Court of Appeal

## State of Florida

Opinion filed May 3, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1065
Lower Tribunal No. 18-1348
_____

**Sara Rosenberg, etc., et al.,**
Appellants,

vs.

**U. S. Bank, N. A.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Genovese Joblove & Battista, P. A., and W. Barry Blum; Burns, P.A., and Thomas A. Burns (Tampa), for appellants.

Shutts & Bowen LLP, and Jason B. Gonzalez, John W. Bustard, Patrick G. Brugger, and Peter H. Levitt, for appellee.

Before LOGUE, SCALES, and HENDON, JJ.

LOGUE, J.

Sara Rosenberg files this appeal in her capacities as Trustee of the

Douglas Rosenberg 2004 Trust and personal representative of the estate of

her husband, Maury Rosenberg. She challenges the trial court's amended summary final judgment awarding U.S. Bank, N.A. a money judgment against the Trust in proceedings supplementary based on Mr. Rosenberg's fraudulent transfer of his asset, a money judgment, to the Trust. Finding no error, we affirm.

## BACKGROUND

This appeal involves the Bank's long and winding efforts to collect debts owed by Maury Rosenberg and Rosenberg's resilient resistance. At the heart of this dispute are three judgments – two obtained by the Bank against Rosenberg and one obtained by Rosenberg against the Bank. As one federal district court wryly observed, this "litigation has resembled a tennis match, bouncing back and forth between various forums in multiple jurisdictions." U.S. Bank, Nat'l Ass'n v. Rosenberg, No. 12-723, 2015 WL 13620423, at *1 (E.D. Pa. Sept. 3, 2015). According to another court, this and related matters have generated over forty-seven separate written decisions across various levels of the federal courts, not counting the litigation in two separate states' courts. In re Nat'l Med. Imaging, LLC, No. AP 14-250, 2023 WL 2246725, at *7 n.17 (Bankr. E.D. Pa. Feb. 27, 2023). At this point, even a basic statement of the facts is far from basic.

2

The Bank obtained judgments in 2015 and 2016 from a federal district court in Pennsylvania against Maury Rosenberg after he defaulted on a 2003 personal guarantee of loans to his company. See U.S. Bank, Nat'l Ass'n v. Rosenberg, No. 12-723, 2015 WL 13620423, at *10; U.S. Bank, Nat'l Ass'n v. Rosenberg, 581 B.R. 424, 427 (E.D. Pa. 2018), aff'd, 741 F. App'x 887 (3d Cir. 2018). Before obtaining these judgments, the Bank unsuccessfully attempted to force Rosenberg and his company into involuntary bankruptcy. As a result, Rosenberg won a judgment in 2013 for damages and attorney's fees against the Bank. Rosenberg v. DVI Receivables XIV, LLC, 818 F.3d 1283, 1286 (11th Cir. 2016). The Bank then moved the court that had entered its 2015 and 2016 judgments to set off the parties' judgments. In a decision that reinvigorated already overheated litigation, the court declined. U.S. Bank, Nat'l Ass'n v. Rosenberg, 581 B.R. at 430.

Meanwhile, on the day after he obtained the 2013 Judgment, Rosenberg transferred the judgment to the Trust, which he created to benefit his son. Because setoff was denied, the Bank paid Rosenberg's 2013 Judgment and attempted to execute on its 2015 and 2016 judgments. It domesticated its judgments in Florida, where Rosenberg lived. Unable to uncover Rosenberg's assets, the Bank filed the underlying proceedings supplementary. The Bank asserted that Rosenberg's transfer of the 2013

3

Judgment to the Trust was a fraudulent transfer to an insider intended to delay, hinder, or defraud creditors under subsections 56.29(3) and (6) of the Florida Statutes. The trial court agreed and entered summary judgment for the Bank, which we now review.

In its final summary judgment, the trial court determined that the Bank established a prima facie case of fraud, which Rosenberg and the Trust failed to rebut as required by subsection 56.29(3)(a). Its order states:

> The transfer was to an insider, the Trust; the transfer was made after Rosenberg had been sued by U.S. Bank; the transfer was of substantially all of Rosenberg's assets; Rosenberg was insolvent or became insolvent shortly after the transfer was made; and Rosenberg retained possession or control of the transferred asset, the 2013 Rosenberg Judgment, as well as the transferee, the Trust (and its assets).

Regarding Rosenberg's control of the transferred asset, the trial court indicated that the record revealed no dispute of fact concerning the following:

> [T]he Trust owns the apartment (located at the Four Seasons in downtown Miami) where Rosenberg has lived since 2004 or 2005; pays all of the expenses for the apartment as well as Rosenberg's other living expenses (meals, etc.) since at least 2010; and owns the vehicle (currently a Land Rover) that Rosenberg and his wife, Sara, use whenever needed. Rosenberg then clearly continued to enjoy use of the Trust's assets, including the fruits of the 2013 Rosenberg Judgment, after transfer.
>
> In addition, Rosenberg, through counsel, has admitted in open court that, even though he was not a named trustee or beneficiary, he nevertheless controlled the Trust, that no one else could make any decisions for the Trust, and that

4

he could put money in and take money out of the Trust as he wanted. Douglas Rosenberg, the grantor of the Trust and Rosenberg's son, confirmed this fact, having testified at the deposition in May 2012 that his father, Maury Rosenberg, controls the Trust's cash.

It further ruled that the Bank was entitled to a money judgment in the amount of the 2013 Judgment transferred to the Trust.

## ANALYSIS

On appeal, Appellant argues that the trial court's entry of judgment in these circumstances violated Florida law governing proceedings supplementary and federal bankruptcy law governing setoffs. We address each argument in turn.

### I. Florida's Proceedings Supplementary to Execution.

#### A. Introduction.

Appellant contends the trial court erred when it set aside the transfer of Rosenberg's 2013 Judgment to the Trust as fraudulent and entered a money judgment. This was error, Appellant maintains, because the fraudulent transfer provision in subsection 56.29(3) of the Florida Statutes (1) has a four-year statute of limitations different from the life-of-the-judgment limit that applies to other proceedings supplementary; (2) does not allow for a money judgment as a remedy for a fraudulent transfer; and (3) does not

5

apply to the fraudulent transfer of funds. We reject these arguments as contrary to the plain text of section 56.29.

**B.    Subsection 56.29(3)'s statute of limitations extends for the life of the judgment.**

Appellant first argues that the trial court erred in entering a judgment because the statute of limitations had run. Rosenberg transferred his 2013 Judgment to the Trust on March 15, 2013. The Bank commenced proceedings supplementary to set aside the transfer as fraudulent under subsection 56.29(3) in April 2018. Appellant argues that the filing of proceedings supplementary was untimely because a claim of a fraudulent transfer under subsection 56.29(3) is governed by the four-year statute of limitations contained in the Uniform Fraudulent Transfer Act, Chapter 726, Florida Statutes, not the life-of-the-judgment limitations that applies to other proceedings supplementary.

In support, Appellant cites to McGregor v. Fowler White Burnett, P.A., 332 So. 3d 481 (Fla. 4th DCA 2021). In McGregor, a judgment creditor attempted to use proceedings supplementary to void a debtor's transfer of funds to a trust account where the moneys were ultimately spent to benefit the debtor. Id. The Fourth District held that the fraudulent transfer remedy under subsection 56.29(3) did not extend for the life of the judgment but only

6

for four years as applied to actions under the Uniform Fraudulent Transfer Act, Chapter 726, Florida Statutes. Id. at 488-90.

At the outset, the Fourth District acknowledged that "[u]nder the pre-2014 version of section 56.29, a judgment creditor could bring fraudulent transfer claims in proceedings supplementary for the life of the judgment, notwithstanding [Chapter 726's] much shorter limitations period." Id. at 489. Indeed, that fraudulent transfer claims under proceedings supplementary could traditionally be brought for the life of the judgment is beyond dispute. Biel Reo, LLC v. Barefoot Cottages Dev. Co., LLC, 156 So. 3d 506, 507-08, 511 (Fla. 1st DCA 2014). See also Uoweit, LLC v. Fleming, 300 So. 3d 1201, 1203 (Fla. 4th DCA 2020) ("Historically, a judgment creditor could start proceedings supplementary for the life of the judgment."); Fla. R. Civ. P. 1.550(a) ("Executions on judgments shall issue during the life of the judgment . . . . [E]xecution or other final process may be issued on special order of the court at any time after judgment."); § 56.021, Fla. Stat. ("When issued, an execution is valid and effective during the life of the judgment, order, or decree on which it is issued.").

The Fourth District noted, however, that "[i]n 2014, for the first time, the Florida legislature specifically incorporated the provisions of chapter 726 and applicable rules of civil procedure in connection with claims concerning the

7

judgment debtor's assets brought under chapter 726." McGregor, 332 So. 3d at 489. In this manner, the Fourth District concluded, subsection 56.29(3) lost its longer statute of limitations and became subject to Chapter 726's shorter statute of limitations. Id.

Any other interpretation, the Fourth District reasoned, would "lead to an absurd result whereby section 56.29 would simultaneously provide for one cause of action for money judgments for fraudulent transfers subject to [Chapter 726's] statute of repose (under 56.29(9)) and an identical cause of action for money judgments for fraudulent transfers that is not subject to [Chapter 726's] statute of repose (under a combination of 56.29(2), 56.29(3), and 56.29(6))." Id. at 492 (emphasis added).

We respectfully disagree with this argument for two reasons. First, in its current form, even after the 2014 and 2016 amendments, the Legislature clearly maintained the fraudulent transfer remedy under subsection 56.29(3) as separate and distinct from the fraudulent transfer remedy under Chapter 726.

The fraudulent transfer remedy under subsection 56.29(3) maintains the characteristics unique to proceedings supplementary. It is available only to the limited class of creditors who hold valid judgments. § 56.29(3)(a), Fla. Stat. It is commenced by filing a motion and affidavit in the case where the

8

judgment was entered. § 56.29(1), Fla. Stat. It is not a new case but simply a continuation of the case in which the judgment was entered. Third parties are brought into the subsection 56.29(3) fraudulent transfer proceedings by simply serving a "Notice to Appear" like in other proceedings supplementary. § 56.29(2) & (3), Fla. Stat. (both using the term "Notice to Appear").[1] The third party must respond, not with an answer, but with "an affidavit . . . stating why the property, debt, or other obligation should not be applied to satisfy the judgment." § 56.29(2), Fla. Stat. Subsection 56.29(3) also shifts the burden of proof regarding transfers to the responding party in a manner that has no counterpart in Chapter 726. § 56.29(3)(a), Fla. Stat. ("the judgment debtor has the burden of proof to establish that such transfer or gift was not made to delay, hinder, or defraud creditors").

In contrast, the fraudulent transfer remedy under Chapter 726, first enacted in 1987, has none of the characteristics unique to proceedings supplementary. Chapter 726 is broadly available to all creditors, including those who have not reduced their claim to a judgment. Thus, it is available

---

[1] The Legislature expressly added the term "Notice to Appear" in subsection 56.29(3)(b) in the 2016 Amendments. Ch. 2016-33 §18, Laws of Florida; compare § 56.29(3)(a) & (b) (2022), with § 56.29(3)(a) & (b) (2014). This amendment indicates that "Notices to Appear" continued as the means to add third parties to the 56.29(3) proceedings even after the recodification and reorganization accomplished in the 2014 and 2016 amendments.

to a greater number of creditors than subsection 56.29(3). Also, that larger class consists mainly of creditors with unproven claims who have a very different status than the creditors with valid judgments at issue in subsection 56.29(3). See generally Chapter 87-79, Laws of Florida; §§ 726.102, 726.105, Fla Stat.; Friedman v. Heart Inst. of Port St. Lucie, Inc., 863 So. 2d 189, 193 (Fla. 2003). It is commenced by filing a complaint subject to the rules of civil procedure. § 726.108, Fla. Stat. See also § 56.29(9), Fla. Stat. It requires the defendant file pleadings as required by the rules of civil procedure. § 726.108, Fla. Stat.. See also § 56.29(9), Fla. Stat. It leaves the burden of proof squarely on the creditor filing the action. See generally Chapter 726, Fla. Stat. Thus, a review of the specific features of the two fraudulent transfer remedies as they exist after the 2014 and 2016 amendments confirms they are not "identical."

In fact, the fraudulent transfer remedy in subsection 56.29(3) maintains, in large part, the same form it has had since at least 1949. See §§ 55.56 & 55.57, Fla. Stat. (1949) (earlier versions with virtually identical language). The 2014 and 2016 amendments did not substantially change any of the text of subsection 56.29(3).[2] In this form, the fraudulent remedy

---

[2] The 2014 and 2016 amendments to subsection 56.29(3) merely renumbered it, replaced the term "defendant" with "judgment creditor," and added the term "Notice to Appear" to subsection 56.29(3)(b). See Ch. 2014-

10

provision of subsection 56.29(3) has served as the most utilized provision of proceedings supplementary.[3] The Legislature's reenactment of the language of subsection 56.29(3) in its long-established form cannot be reconciled with the claim that the remedy contained in this language is "identical" to the remedy provided by Chapter 726.

In contending the two remedies are identical, the Fourth District relies upon subsection 56.29(9)'s reference to Chapter 726. McGregor, 332 So. 3d at 489. Subsection 56.29(9) provides, "[t]he court [hearing proceedings supplementary] may entertain claims . . . brought under chapter 726 . . . Claims under chapter 726 . . . shall be initiated by a supplemental complaint . . . subject to chapter 726 and the rules of civil procedure." This language simply authorizes the judge hearing proceedings supplementary to also hear related actions brought under Chapter 726. This language is merely procedural, as the Legislature itself indicated.[4] It does not merge the

---

183 §17, Laws of Florida; Ch. 2016-33 §18, Laws of Florida; compare § 56.29(3)(a) & (b) (2022), § 56.29(3)(a) & (b) (2016), with § 56.29(6)(a) & (b) (2012).

[3] "[P]roceedings supplementary that involve fraudulent transfers … is when § 56.29 is most often used." Biel Reo, LLC, 156 So. 3d at 510 (citing Padovano, Florida Civil Practice § 13:6).

[4] Although unnecessary to our analysis, we note the Legislature expressly declared the 2014 amendments "are remedial in nature, [and] are intended to clarify existing law." Chapter 2014, Laws of Florida, section 18 (June 20,

11

fraudulent transfer remedy in subsection 56.29(3) with the remedy in Chapter 726. It maintains the unique characteristics that distinguish one from the other. It does not make the two remedies "identical."

While it might be "absurd" to have different statutes of limitations for an "identical cause of action for money judgments for fraudulent transfers," it is not absurd to have different statutes of limitations for different remedies. Certainly, there is nothing absurd in allowing judgment creditors in proceedings supplementary to have the benefit of a statute of limitations that extends for the life of the judgment. That has always been the law in Florida. See, e.g., Young v. McKenzie, 46 So. 2d 184, 185 (Fla. 1950) (holding the statute of limitations for proceedings supplementary to execution should extend throughout "the period of efficacy of an execution"); Biel Reo, LLC, 156 So. 3d at 507-08, 511; Uoweit, 300 So. 3d at 1203; Fla. R. Civ. P. 1.550(a); § 56.021, Fla. Stat.

In sum, nothing in the text supports Appellant's assertion that subsection 56.29(3)'s fraudulent transfer remedy is "identical" to Chapter

---

2014). The Senate Judiciary Committee's bill analysis of the 2016 amendments stated, "these changes are procedural and do not represent substantive changes to any part of chapter 56, F.S." Judiciary Committee, Bill Analysis CS/SB 1042 (Fla. Senate Jan. 19, 2016). Thus, even in the wobbly area of legislative history, we find no support for Appellant's argument that the Legislature intended the 2014 and 2016 amendments to result in major changes to existing law.

726's fraudulent transfer remedy. The fraudulent transfer remedy in proceedings supplementary therefore extends for the life of the judgment, as the Legislature intended.

**C.   The available remedies for a fraudulent transfer under subsections 56.29(3) and 56.29(6) include a money judgment.**

Appellant next argues that the trial court erred in entering a money judgment in proceedings supplementary as a remedy for a fraudulent transfer under subsection 56.29(3). We reject this argument because the plain text of section 56.29 contradicts it. Subsection 56.29(6) expressly authorizes money judgments as remedies in proceedings supplementary in general, including claims for fraudulent transfers.

In support, Appellant again cites the Fourth District's opinion in McGregor, which reasoned that the "power to enter money judgments under subsection (6) does not extend to relief sought under subsection (3)(b)" because "subsection (3)(b) specifically limits the available relief to turnover of the fraudulently transferred personal property to the sheriff. This is consistent with the fact that subsection (3)(b) provides a narrow exception to the requirements of subsection (9) that fraudulent transfer claims be pursued by complaint, in which case money judgments may be obtained consistent with chapter 726." McGregor, 332 So. 3d at 490 (quoting In re British Am.

Ins. Co. Ltd., 607 B.R. 753, 757 n.1 (Bankr. S.D. Fla. 2019) (emphasis removed)). The Fourth District concluded this result best reconciles "the text of section 56.29 taken as a whole." Id.

We respectfully disagree based on two textual arguments and long-standing case law. Subsection 56.29(6) authorizes the court in proceedings supplementary to enter money judgments against "any person to whom a Notice to Appear has been directed . . . whether such person has retained the property . . ." § 56.29(6), Fla. Stat. (emphasis added). At the same time, subsection 56.29(3) also expressly references "Notices to Appear" as the means to bring into the proceeding the person to whom the debtor fraudulently transferred the asset. § 56.29(3)(b), Fla. Stat. It follows that subsection 56.29(6)'s authority to issue money judgments against "any person to whom a Notice to Appear has been directed" includes persons to whom a "Notice to Appear" was directed under subsection 56.29(3). In fact, the Legislature added the term "Notice to Appear" in subsection 56.29(6)'s grant of authority to issue money judgments at the same time it added the reference to a "Notice to Appear" in subsection 56.29(3)'s fraudulent transfer provision. Ch. 2016-33 §18, Laws of Florida. This text cannot be reconciled with Appellant's argument.

14

Moreover, subsection 56.29(6) authorizes issuance of a money judgment for the purposes of "this section." Throughout section 56.29, the Legislature carefully used the term "section" when referring to the whole of 56.29 and "subsection" when referring to a specific subsection. See § 56.29(6), Fla. Stat. (using at different points for different meanings the terms "section" and "this subsection"); § 56.29(2) & (6), Fla. Stat. (referring to "subsection 1"). Given the Legislature's careful distinction between these terms, when the Legislature authorized money judgments "to carry out the purpose of this section," it meant the entire statute, not just select subsections. McGregor's interpretation essentially deletes the word "section" and replaces it with the words "subsection (2) but not subsection (3)." An interpretation that requires this level of rewriting is not persuasive or permissible. Hayes v. State, 750 So. 2d 1, 4 (Fla. 1999) ("[Courts] are not at liberty to add words to statutes that were not placed there by the Legislature.").

In fact, even before the addition of express language authorizing money judgments, the general provision of the proceedings supplementary statute authorizing the court "to enter any orders . . . required to carry out the purpose of this section" was interpreted to allow a money judgment as a

remedy for fraudulent transfers.[5] We do not see how the addition of express references to money judgments can be read as making them less available than they were before the express references were added. To the contrary, under basic principles of statutory construction, the addition of express authorizations for money judgments is best read as a ratification of these interpretations. Fla. Highway Patrol v. Jackson, 288 So. 3d 1179, 1183 (Fla. 2020) ("'[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial

---

[5] See, e.g., Biel Reo, LLC, 156 So. 3d at 509 n.2 (recognizing a money judgment could be entered to remedy a fraudulent transfer); Pollizzi v. Paulshock, 52 So. 3d 786, 789 (Fla. 5th DCA 2010) ("The trial court properly concluded that, under the facts of this case, such liberal construction enabled it to enter a money judgment against DAA's shareholders/corporate officers who were found to have improperly transferred monies from the corporation's accounts to themselves."); Mejia v. Ruiz, 985 So. 2d 1109, 1114 (Fla. 3d DCA 2008) (recognizing a money judgment could be entered to remedy a fraudulent transfer); Allied Indus. Int'l, Inc. v. AGFA-Gevaert, Inc., 688 F. Supp. 1516, 1521 (S.D. Fla. 1988), aff'd sub nom. Allied Indus. Int'l, Inc. v. AGFA-Gevaert, 900 F.2d 264 (11th Cir. 1990), and aff'd sub nom. Allied Indus. Int'l Inc. v. AGFA-Gevaert, 900 F.2d 264 (11th Cir. 1990) (holding an impleaded defendant to be liable in the amount of $30,000.00 when she failed to meet her burden under 56.29(3) requiring to a transferee who is "on confidential terms with the defendant" to establish that a transfer of the defendant's property was not made to delay, hinder, or defraud creditors."). Note these cases involved versions of subsection 56.29(3) that were largely identical to its current version except they were numbered subsection 56.29(6). Compare 56.29(3)(a) & (b) (2022), with 56.29(6)(a) & (b) (2012).

interpretations as well.'" (quoting Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008))).

Finally, Appellant's interpretation is particularly unpersuasive because the Legislature's purpose when enacting proceedings supplementary has always been understood to give the circuit court the authority to grant "the most complete relief possible in satisfying [a creditor's] judgment." Riley v. Fatt, 47 So. 2d 769, 772 (Fla.1950). See also State ex rel. Phoenix Tax Title Corp. v. Viney, 163 So. 57, 60 (Fla. 1935). Appellant's interpretation turns this understanding on its head by depriving the circuit court of one of the most useful tools to remedy a fraudulent transfer. We therefore conclude that money judgments are a remedy for a fraudulent transfer under subsections 56.29(3) and 56.29(6).

## D. 56.29(3) reaches choses in action and funds.

Appellant next argues that the trial court erred in entering summary judgment because subsection 56.29(3) is not available to set aside the fraudulent transfers of funds. This argument fails from the outset because the asset fraudulently transferred, Rosenberg's 2013 Judgment, was a chose in action. "By the great weight of authority a judgment is regarded as a cause of action or a chose in action." Crane v. Nuta, 26 So. 2d 670, 671

17

(Fla. 1946).[6] "A chose in action belonging to the judgment debtor has generally been considered a property right reachable by a judgment creditor in proceedings supplementary." Donan v. Dolce Vita Sa, Inc., 992 So. 2d 859, 860 (Fla. 4th DCA 2008); Myd Marine Distrib., Inc. v. Int'l Paint Ltd., 201 So. 3d 843, 845 (Fla. 4th DCA 2016) ("A 'chose in action' is 'property' within the meaning of section 56.29(5) [since renumbered to 56.29(6)]"); Gen. Guar. Ins. Co. of Fla. v. DaCosta, 190 So. 2d 211, 213–14 (Fla. 3d DCA 1966) ("[S]upplementary proceedings are ordinarily available to reach 'choses in action.'").

Appellant's argument regarding funds is also contrary to the plain text of subsection 56.29(3) and a long line of cases interpreting it. Appellant argues that subsection 56.29(3) cannot be used to reach funds because it uses the terms "personal property" and "levy," and it references the court "direct[ing] the sheriff to take the property to satisfy the execution." In support, she again cites the Fourth District's decision in McGregor where the court held, without extended discussion, that the types of property reachable

---

[6] See, e.g., Spa Creek Servs., LLC v. S.W. Cole, Inc., 239 So. 3d 730, 732 n.1 (Fla. 5th DCA 2017) ("A judgment also constitutes a cause of action or chose in action."); Marsh v. Patchett, 788 So. 2d 353, 355 (Fla. 3d DCA 2001) ("Under Florida law, a judgment is a chose in action."); Griffin v. Zinn, 318 So. 2d 151, 152 (Fla. 2d DCA 1975) (referring to an Ohio judgment as "a chose in action").

18

under subsection 56.29(3) do not include funds. <u>McGregor</u>, 332 So. 3d at 487-88. We again respectfully disagree.

Subsection 56.29(3) refers to "personal property" subject to execution and levy. The term "personal property" is most often understood as the opposite of "real property." Bryan A. Garner, Garner's Dictionary of Legal Usage 671 (3d ed. 2011). Broadly defined, "personal property" includes both tangible and intangible personal property. <u>Id.</u> Intangible personal property normally is understood to include funds. <u>See, e.g.</u>, § 192.001(11)(b), Fla. Stat. (2017) (defining "intangible personal property" to include "money").[7]

Moreover, fraudulently transferred personal property in proceedings supplementary has always been interpreted to encompass funds. For example, <u>Biel Reo, LLC</u>, 156 So. 3d at 507, was a section 56.29 fraudulent

---

[7] § 56.09, Fla. Stat. (allowing execution on a corporate judgment debtor's "current money"); Philip J. Padovano, Trawick's Florida Practice and Procedure § 28:1 (2022 ed.) (an issued execution "can be levied on lands, tenements, chattels, goods, equities of redemption in land, corporate stock, equitable interests under security agreements, <u>and money</u>.") (emphasis added); <u>Hillsborough Cnty. v. Dickenson</u>, 169 So. 734, 737 (Fla. 1935) ("The rule is general that a debtor's interest in a trust fund created either by himself or another may be reached to satisfy a judgment against him by a creditor's bill."); <u>Monroe Cnty. v. McCormick</u>, 752 So. 2d 1239, 1240-41 (Fla. 3d DCA 2000) (holding that attorney's fees owed to a party were "personal property" and therefore subject to a code enforcement lien).

transfer case in which the judgment debtors "transferred millions of dollars into newly established irrevocable family trusts" on which the judgment creditor sought to execute. Similarly, Pollizzi, 52 So. 3d at 788, was a section 56.29 fraudulent transfer case where it was alleged that "the third-party defendants 'fraudulently and otherwise improperly transferred, among other things, approximately $150,000.00 in funds from DAA's operating account' to themselves and to entities they owned and controlled."

Further, Mejia, 985 So. 2d at 1111, was a section 56.29 fraudulent transfer case in which it was alleged that the judgment debtor corporation sold the corporation's assets and distributed the proceeds to its two shareholders, leaving the debtor corporation insolvent. See also Crawford v. U.S. Fid. & Guar. Co., 139 So. 2d 500, 503 (Fla. 1st DCA 1962) (in proceedings supplementary, trial court "was well within its proper sphere in ordering Crawford Construction Company to file its statement under oath showing what funds said corporation owed James F. Crawford, individually, and subjecting same to levy by the judgment creditor.").[8] In these cases, the

---

[8] Note these cases involved versions of 56.29(3) that were virtually identical to its current version except they were codified under different subsections and sections. Compare §56.29(3)(a) & (b) (2022), with §56.29(6) (a) & (b) (2012), and with §§ 55.56 & 55.57, Fla. Stat. (1949).

As discussed earlier, the 2014 and 2016 amendments to subsection 56.29(3) did not substantively change the text of what is now codified at subsection

20

courts recognized that a judgment creditor could use subsection 56.29(3) or its earlier versions to set aside a fraudulent transfer of funds.

We see no justification for breaking with such longstanding precedent and black letter law to adopt Appellant's restrictive interpretation of "personal property." Such a limiting definition is particularly unwarranted because, as mentioned before, the Legislature's purpose in enacting proceedings supplementary to execution has always been understood to provide the circuit court the authority to grant "the most complete relief possible in satisfying [a creditor's] judgment." Riley, 47 So. 2d at 772.

## II. The denial of setoff is not a legal bar to the Bank executing on its judgment.

After domesticating its judgments, the Bank had a well-recognized right under Florida law to execute on any of Rosenberg's non-exempt assets. Chapter 56, Fla. Stat. Appellant argues Rosenberg's 2013 Judgment is "exempt" from execution by the Bank under federal bankruptcy policy. U.S. Bank, Nat'l Ass'n, 581 B.R. at 430. The federal bankruptcy policy that allowed the federal district court to deny the Bank's motion to set off its

---

56.29(3). See note 2, supra. None of these amendments abrogate the holdings of the cases interpreting the language of subsection 56.29(3) as authorizing the setting aside of the fraudulent transfer of funds. See Jackson, 288 So. 3d at 1182–83 (stating that the Legislature's re-enactment of language interpreted by the courts is generally understood to reflect the Legislature's intent to adopt those judicial interpretations).

judgments[9] against Rosenberg's 2013 Judgment,[10] Appellant argues, should be extended or expanded to a rule of law that <u>binds</u> a judge both to deny a setoff and to prohibit future execution by the Bank against the proceeds of that type of judgment. We are not persuaded by this argument. It glosses over the difference between setoff and execution, two very different methods to collect a judgment. Also, if accepted, it would deprive bankruptcy courts of the flexibility innate in discretion, discretion being the basis to deny setoffs in the first place.

For obvious reasons, setoffs are highly favored in the law and highly valued by creditors. They reflect the commonsense idea that when entities owe each other money, they should apply their mutual debts against each other to avoid "the absurdity of making A pay B when B owes A." <u>Studley v. Boylston Nat. Bank of Bos.</u>, 229 U.S. 523, 528 (1913). Congress expressly directed that the bankruptcy code be interpreted to not interfere with state law rights to setoff, save for certain exceptions. 11 U.S.C. § 553. At issue here is a court-created addition to Congress' list of circumstances where a bankruptcy court could interfere with a setoff.

---

[9] The judgments for Rosenberg's breach of his loan guarantees.

[10] The judgment for damages for the Bank's wrongful petition for involuntary bankruptcy.

22

The bankruptcy code allows creditors to force failing debtors into involuntary bankruptcy. 11 U.S.C. § 303. If such an action is unsuccessful, however, the bankruptcy code permits the debtor to seek damages and attorney's fees. Id. If the debtor is awarded such damages, some cases have held that a bankruptcy court has discretion to deny the creditor that initiated the involuntary bankruptcy a setoff. U.S. Bank, Nat'l Ass'n v. Rosenberg, 741 F. App'x 887, 890 (3d Cir. 2018). The bankruptcy court's power to interfere with a setoff in this circumstance serves as a sanction to discourage creditors from prematurely forcing debtors into an involuntary bankruptcy, which can damage debtors and other creditors. Id. [11]

On this basis, the federal district court that issued the Bank's 2015 and 2016 judgments denied the Bank's request to set off its judgments against Rosenberg's 2013 Judgment. Appellant argues that the prior decision to deny setoff also, by implication, made Rosenberg's 2013 Judgment exempt from execution.

---

[11] The law in this area is not entirely settled. In re Better Care, Ltd., 97 B.R. 405 (Bankr. N.D. Ill. 1989) (allowing a creditor to set off its judgment against a judgment the debtor had obtained due to a petition for involuntary bankruptcy). See generally Law. v. Siegel, 571 U.S. 415, 421 (2014) (reversing a sanction created by a bankruptcy court outside those expressly authorized by Congress because "[c]ourts' inherent sanctioning powers are likewise subordinate to valid statutory directives and prohibitions [contained in the bankruptcy code].").

23

Appellant first argues this point as a matter of res judicata or collateral estoppel. The problem with this argument is that the federal district court's ruling arose only in the context of the Bank's motion for a setoff. The decision is limited to denying the setoff. As framed by the decision itself, the question of whether to prohibit the Bank from executing on a judgment in a subsequent state court proceeding occurring years later was not before the court. U.S. Bank, Nat'l Ass'n v. Rosenberg, 581 B.R. 424. The same is true of the circuit court opinion upholding the district court's decision. U.S. Bank, Nat'l Ass'n v. Rosenberg, 741 F. App'x 887. We therefore reject Appellant's collateral estoppel and res judicata arguments.

Nevertheless, citing the Supremacy Clause, U.S. Const. art. VI, cl. 2, Appellant next argues that the equitable principles that allow courts to deny setoffs in these circumstances also require courts to prohibit a creditor from paying one judgment and executing on the other. Appellant maintains in her Initial Brief that, "federal bankruptcy policy forbids [the creditor] from offsetting or executing against proceeds from a § 303(i) judgment paid to the debtor." This is so, Appellant argues, because setoff and execution are essentially identical.

In support, Appellant cites In re National Medical Imaging, LLC, 644 B.R. 94 (Bankr. E.D. Pa. 2022), an interim decision in a pending matter that

24

was decided in an unusual posture.[12] The bankruptcy court in that case sought to explain a prior order, which expressly denied a setoff and prohibited execution in facts similar but not identical to those here, by reasoning that the creditor's attempt to execute in those circumstances was "the functional equivalent of a setoff attempt" and was "nearly the exact same kind of transaction." Id. at 125.

We must respectfully take exception to this reasoning. To begin with, Appellant fails to direct us to, and we cannot find, any other court that has held that setoff is identical to execution in this context or any other context. Instead, it is generally recognized that "[a]ttachment and execution are fundamentally different from setoff." Banco Cent. de Reserva del Peru v. Riggs Nat. Bank of Washington, D.C., 919 F. Supp. 13, 17 (D.D.C. 1994).

---

[12] Appellant cites National Medical Imaging for its discussion equating setoffs and execution discussed infra. The National Medical Imaging order was issued in a proceeding involving a creditor's involuntary petition for bankruptcy filed in 2008 and dismissed in 2009. The issue being decided in the 2022 order concerned the debtor's claims for attorney's fees for successfully obtaining the 2009 dismissal. In re Nat'l Med. Imaging, LLC, 644 B.R. at 103.

In particular, the legal matter before the court was the creditor's motion for partial summary judgment to bar some of the debtor's pending attorney's fees claims relating to the 2009 dismissal. Id. The ruling of National Medical Imaging was to deny the creditor's motion because disputed issues of material fact precluded summary judgment. Id. at 127. National Medical Imaging's discussion regarding setoffs and execution relied upon by the Appellant does not appear necessary to that ruling.

Setoff and execution are just two of many distinct and different methods to collect debts. See, e.g., 31 U.S.C. § 3711 (listing setoff and execution among many of the different methods for the federal government to collect debts).

Suggesting that the two methods are identical glosses over important differences. Setoff sounds in equity, execution in law. Banco Cent. de Reserva del Peru, 919 F. Supp. at 17. The grounds for granting each are different.[13] As this case illustrates, they usually arise at different ends of the collection process. But the vital differences become apparent when one considers them from the viewpoints of the creditor and debtor, which are the relevant viewpoints in debt collection.

A setoff offers the creditor and confronts the debtor with quick, easy, and certain satisfaction of the creditor's judgment. In contrast, the remedy of paying one judgment and executing on the other often launches a hapless creditor into a lengthy and frequently futile chase. Because of the difference, creditors, who already have the right to execute on a judgment, expend considerable time and resources to obtain setoffs; while debtors, who are

---

[13] A judicial setoff in bankruptcy "is permissive, not mandatory; its application rests in the discretion of the court[.]" Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1399 (9th Cir. 1996). In contrast, execution on a judgment is normally a matter of right. See generally Chapter 56, Fla. Stat.; Ratner v. Bernabo, 495 So. 2d 839, 840 (Fla. 3d DCA 1986).

already exposed to execution, expend considerable time and resources to prevent setoffs. See, e.g., U.S. Bank, Nat'l Ass'n, 581 B.R. at 430.

To understand these differences, one need look no further than this case. If setoff had been granted, this dispute would have been over half a decade ago. Instead, it is still going strong. As this record shows, neither from the perspective of the creditor or debtor can these two very different remedies be equated.

Finally, the federal district court here denied the Bank the right to a setoff as an exercise of discretion for the purpose of deterring the filing of premature petitions for involuntary bankruptcy. Particularly in the context of levels of discretionary sanctions in creditor and debtor relations, it appears to us that the denial of only a setoff is not the functional equivalent of denying both a setoff and execution. Denial of the setoff serves as a sanction because it bars the creditor from the most efficient and secure remedy although it leaves the creditor an alternative remedy less efficient and less certain of outcome. Denial of both is a higher level of sanction than just denying a setoff.

One can easily imagine circumstances where a court in equity weighing different sanctions could decide it was an adequate sanction to deny the creditor the more favorable method of setoff without considering

whether or intending to prohibit the creditor from using less favorable methods such as execution, which is what we believe happened here. If adopted, Appellant's argument that "federal bankruptcy policy forbids [the creditor] from offsetting or executing" would deprive the bankruptcy courts of the very discretion which is the basis of the bankruptcy courts' authority to depart from Congress' section 553 directive to allow setoffs in the first place.

For these reasons, we reject Appellant's argument that the federal bankruptcy policy at issue should be extended or expanded from an allowance of judicial discretion to deny the type of setoff at issue here to a rule of law that binds a judge both to deny a setoff and to prohibit future execution by the creditor against the proceeds of the type of judgment at issue here. The discretion to deny a setoff includes the discretion to grant a setoff. It also includes the flexibility to deny a setoff and allow execution, as occurred here.

Affirmed.